**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| **AMERICAN CASUALTY COMPANY OF READING, PENNSYVANIA** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO. 22-504-MAK** |
| | : | |
| **ALLEN REESE** | : | |

## <u>MEMORANDUM</u>

**KEARNEY, J.**                                    **November 4, 2022**

      A behavior therapist twice plead guilty to sexually abusing or assaulting a young man with autism resulting in the behavior therapist's present incarceration. The young man's mother then sued the behavior therapist for damages on her son's behalf. The behavior therapist had earlier purchased a healthcare provider's personal liability insurance policy to provide him a defense and indemnity for workplace claims. The insurer is providing a defense under a reservation of rights. The therapist is challenging his guilty plea in the criminal courts.

      The insurer now asks us to declare it has no duty to further defend or indemnify based on the behavior therapist's earlier guilty pleas barring him from claiming no sexual assault in the civil case, its policy does not apply to the boy's claims, and the policy's exclusions otherwise bar coverage. We disagree with the insurer as to the collateral estoppel effect of these guilty pleas now being challenged in post-conviction proceedings. We also find the policy applies to the behavior therapist's conduct in his alleged workspace. But the insurer is correct the behavior therapist agreed to exclude insurance coverage for claims of sexual misconduct, regardless of findings or appeals. We enter summary judgment in favor of the insurer and declare there is no duty to further defend or provide indemnity to the therapist based on the allegations now pending against the behavior therapist.

I.      **Undisputed material facts**[1]

Allen Reese formerly worked as a behavior therapist for Delaware Guidance Services for Children and Youth.[2] He interacted with minor L.N. through his employment. L.N. is a young man with autism. The Attorney General for the State of Delaware charged Mr. Reese with sexually abusing L.N. The Maryland State Attorney for Worcester County also charged Mr. Reese with sexually abusing L.N.

Mr. Reese plead guilty to two counts of Sexual Abuse of a Child by a Person in a Position of Trust in Delaware state court on July 23, 2021 and the Sexual Abuse of a Minor in Maryland state court on October 28, 2021.[3] The Delaware state court judge sentenced Mr. Reese to twenty-five years' incarceration.[4] Mr. Reese also received a twenty-five year sentence from the Maryland state court judge.[5]

Mr. Reese moved for post-conviction relief after pleading guilty in the Delaware criminal case.[6] Mr. Reese also plans to move for post-conviction relief in the Maryland criminal case.[7] Mr. Reese is currently serving his sentence at the Sussex Correctional Institute in Georgetown, Delaware.[8]

L.N. is the alleged victim of Mr. Reese's conduct in both the Maryland and Delaware criminal cases. L.N.'s mother sued Mr. Reese on April 9, 2021 in Delaware Superior Court for compensatory and punitive damages arising from Mr. Reese's admitted pleas of sexual assault of L.N on November 26, 2019 in Maryland and on November 27, 2019 in Delaware.[9] L.N.'s mother alleges Mr. Reese "act[ed] as an agent and employee" of Delaware Guidance Services for Children and Youth when he committed the alleged sexual assaults because the Delaware Guidance Services for Children and Youth assigned Mr. Reese "to be the counselor and responsible for the care" of her autistic son L.N.[10]  L.N.'s mother does not plead a claim other than for personal injuries arising

2

from the sexual assault against Mr. Reese.[11]

*Mr. Reese's Professional Liability and Workplace Coverage insurance.*

Mr. Reese purchased a Healthcare Providers Professional Liability Insurance Policy from American Casualty Company of Reading, Pennsylvania in connection with his employment as a behavior therapist.[12] American Casualty provides $1 million in coverage for each covered claim and $3 million for all covered claims combined.[13] Mr. Reese notified American Casualty of L.N.'s underlying civil lawsuit against him. The insurer agreed to provide a defense to Mr. Reese subject to a complete reservation of rights in letters dated July 2, 2021 and July 6, 2021.[14] American Casualty preserved the ability to withdraw representation under its Policy exclusions.[15]

Mr. Reese seeks to invoke the duty to defend and indemnify in two portions of his insurance policy: Professional Liability Coverage and Workplace Liability Coverage.[16]

The Policy's Professional Liability Coverage requires American Casualty to defend Mr. Reese and pay for license protection, the amount of liability owed, and claim expenses.[17] The Policy's Professional Liability Coverage contains several exclusions including: a sexual misconduct exclusion,[18] a willful violation of law exclusion,[19] a punitive damages exclusion,[20] and an expected or intended injury exclusion.[21]

The Policy's Workplace Liability Coverage requires American Casualty to provide a defense and pay for liability for a claim of injury caused by an occurrence at the workplace.[22] The Workplace Liability Coverage, like the Professional Liability Coverage, also contains several exclusions including a sexual misconduct exclusion,[23] a professional services exclusion,[24] a willful violation of law exclusion,[25] a punitive damages exclusion,[26] and an expected or intended injury exclusion.[27]

Both coverages limit the amount of coverage through a sexual misconduct sublimit.[28] The

sexual misconduct sublimit limits the amount American Casualty will pay in a covered sexual misconduct claim to $25,000.[29] The $25,000 sublimit applies to all claims combined under both the Workplace Liability Coverage and the Professional Liability Coverage.[30] American Casualty caps its exposure if the "sexual misconduct has not been determined to have occurred by any . . . court ruling . . . whether appealed or not."[31]

## II.    Analysis

American Casualty seeks a declaratory judgment it has no duty to defend or indemnify Mr. Reese and is entitled to immediately withdraw from defending Mr. Reese in the underlying civil lawsuit.[32] American Casualty argues it has no duty to defend or indemnify Mr. Reese in the underlying civil lawsuit under the Professional Liability Coverage or the Workplace Liability Coverage. Even if the Policy affords coverage, American Casualty contends the sexual misconduct exclusions, professional services exclusion, willful violation of law exclusions, punitive damages exclusions, and expected or intended injury exclusions preclude coverage.[33] If we find American Casualty has a duty to defend or indemnify Mr. Reese in the underlying civil lawsuit, American Casualty asks we declare American Casualty's maximum limit of liability under the Policy is the sexual misconduct aggregate sublimit of $25,000, and after payment of the sublimit, American Casualty's duty to defend or settle on behalf of Mr. Reese in the underlying civil lawsuit ends.[34]

American Casualty now moves for summary judgment.[35] American Casualty asks we declare American Casualty has no obligation to defend or indemnify Mr. Reese in connection with the underlying civil lawsuit.[36] American Casualty argues the interpretation of the policy language is an issue of law and the doctrine of issue preclusion bars Mr. Reese from arguing he did not commit the actions necessary to his guilty pleas.[37] American Casualty claims it has no duty to defend or indemnify Mr. Reese under the Policy's Professional Liability Coverage because the

coverage does not apply, and even if it did, the sexual misconduct exclusion, willful violation of law exclusion, punitive damages exclusion, and expected or intended injury exclusion prevent coverage.[38] American Casualty also argues it has no duty to defend or indemnify Mr. Reese under the Policy's Workplace Liability Coverage because the coverage does not apply, and even if it did, the sexual misconduct exclusion, professional services exclusion, willful violation of law exclusion, punitive damages exclusion, and expected or intended injury exclusion prevent coverage.[39] American Casualty argues, even if there is a duty to indemnify, the sexual misconduct sublimit caps the amount owed to $25,000.[40]

The convicted and incarcerated Mr. Reese *pro se* opposes summary judgment. Mr. Reese argues he is moving for post-conviction relief in both criminal cases and the various Policy exclusions will not apply once his guilty pleas are overturned.[41] Mr. Reese does not challenge American Casualty's interpretation of the Policy.

We disagree in part with American Casualty as the doctrine of issue preclusion does not stop Mr. Reese from disputing whether he is guilty in the underlying civil lawsuit and the Policy's Professional Liability and Workplace Liability coverage includes the defense of L.N.'s underlying civil lawsuit. But we agree with American Casualty on the balance of its argument. Mr. Reese agreed to exclude from coverage certain sexual misconduct allegations. We grant summary judgment in favor of American Casualty and find it does not have a duty to defend or indemnify Mr. Reese in L.N.'s underlying civil lawsuit based on the plain language of the Policy's sexual misconduct exclusions.

### A.    American Casualty does not meet its burden to preclude Mr. Reese from disputing he committed the alleged sexual abuse.

American Casualty argues Mr. Reese's guilty pleas in the Delaware and Maryland criminal cases for sexual abuse of L.N. "conclusively establish his guilt for those offenses" and thus impact

his coverage in L.N.'s underlying civil lawsuit.[42] Mr. Reese argues he did not commit the actions underlying his guilty pleas and it would be a miscarriage of justice to treat the guilty pleas as true because he is actively appealing the guilty pleas through post-conviction relief.[43] American Casualty argues the doctrine of issue preclusion bars Mr. Reese from rearguing issues of fact admitted in his guilty pleas.[44]

The doctrine of issue preclusion bars us from relitigating an issue another court has decided.[45] The Delaware Supreme Court instructs a party is precluded from arguing an issue when the issue is "(1) a question of fact essential to the judgment, (2) [is] litigated and (3) determined (4) by a valid and *final* judgment."[46] The Delaware Supreme Court places the burden of proof on the party asserting issue preclusion.[47]

"[W]here a litigant pleads guilty and is convicted by a court, the litigant may not challenge the conviction in subsequent, civil litigation."[48] "[T]he decision of whether [Mr. Reese's] criminal conviction can be conclusive as to a question of fact in a civil case rests in the sound discretion of the court, particularly in cases involving offensive collateral estoppel."[49] The parties do not argue, and we cannot find, authority for issue preclusion arising from a guilty plea now being challenged (or soon to be challenged) in post-conviction proceedings. This necessarily impacts the fourth element of issue preclusion – whether there has been "a valid and final judgment."[50]

Delaware courts tend to look at federal law for guidance on issue preclusion.[51] Our Court of Appeals rejects a bright-line rule for finality and requires the earlier judgment to be "sufficiently firm."[52] Our Court of Appeals directs us to consider "whether the parties were fully heard, whether a reasoned opinion was filed, and whether that decision could have been, or actually was, appealed."[53] None of the factors are determinative and the list of factors is not exhaustive.[54]

Our Court of Appeals found a partial summary judgment did not have preclusive effect

because it was not "sufficiently firm" in *Free Speech Coalition, Inc v. Attorney General*.[55] Our Court of Appeals focused on the party's inability to appeal the partial summary judgment because the lower court "never issued a final judgment" on all the claims.[56] Our Court of Appeals called *Free Speech Coalition* a "close call" and only considered the finality factor on whether a party appealed the decision.[57]

We contrast the lack of finality addressed in *Free Speech Coalition* with our Court of Appeals holding a guilty plea had preclusive effect in a tax deficiency matter after the taxpayer plead guilty to the crime of federal tax evasion in *Anderson v. Commissioner*.[58] The Internal Revenue Service issued a tax deficiency.[59] The taxpayer challenged the deficiency in the Tax Court and the Tax Court precluded the taxpayer from challenging whether he fraudulently underpaid.[60] Our Court of Appeals affirmed and held the guilty plea precluded relitigating the same issue recognizing "an issue is conclusively established in future litigation through the doctrine of collateral estoppel *only when it is determined by a final judgment*."[61]

American Casualty cannot satisfy all four elements necessary to establish issue preclusion: "(1) a question of fact essential to the judgment, (2) [is] litigated and (3) determined (4) by a valid and final judgment."[62] Mr. Reese's two guilty pleas to his conduct with L.N. may satisfy the first three elements required to establish issue preclusion in L.N.'s underlying civil lawsuit because his guilty pleas litigated the issue of whether he violated the criminal laws of Delaware and Maryland, which are at issue in the underlying civil lawsuit.[63] But we cannot find American Casualty met its burden of showing Mr. Reese's guilty pleas have a preclusive effect with a pending (or soon to be filed) motion for post-conviction relief because the judgments are not sufficiently "final."[64]

The burden is on American Casualty to prove issue preclusion applies.[65] But American Casualty has not met its burden of showing a final order arising from the guilty plea during the

appeal or post-conviction procedures. None of the issues decided by the guilty pleas are finally determined for the purposes of this case. American Casualty even recognizes, although "unlikely[,]" Mr. Reese's guilty pleas *could* be vacated.[66] We appreciate the appeal and post-conviction procedures create additional expenses for American Casualty. But we defer to the due process of the post-conviction relief process and must draw all reasonable inferences in favor of the non-movant, Mr. Reese. So for the purposes of this motion, we assume Mr. Reese did not commit the sexual misconduct as a matter of interpreting his insurance coverage.

Mr. Reese's guilty pleas do not have preclusive effect because they are not final judgments given Mr. Reese moved for post-conviction relief. We now must determine whether the Policy's Professional Liability and Workplace Liability Coverages purchased by Mr. Reese apply to L.N.'s underlying civil lawsuit against him – assuming Mr. Reese is not guilty of the underlying conduct – and, if so, whether any of the agreed-to exclusions preclude coverage.

### B. American Casualty owes no duty to defend or indemnify Mr. Reese under the Professional Liability Coverage.

American Casualty argues its duty to defend and indemnify Mr. Reese under the Policy does not apply to the underlying civil lawsuit because of Mr. Reese's guilty pleas, and if it does, the Policy excludes coverage.[67] Mr. Reese argues L.N.'s claims lack merit in the underlying civil lawsuit and thus American Casualty has a duty to defend and indemnity him.[68] Mr. Reese asserts his post-conviction filings "will prove two things (1) [he] is innocent and (2) [L.N.] not [Mr. Reese] in the underlying lawsuit was assaulted."[69]

American Casualty asks we interpret the of scope of coverage of its Policy's Professional Liability Coverage and Workplace Liability Coverage.[70] The parties do not dispute Delaware substantive law applies.[71] Issues of issuance policy interpretation are purely a question of law.[72] "Our objective is to determine the intent of the parties from the language of the contract."[73] We

"focus on the parties' shared expectations at the time they contracted, but because Delaware adheres to an objective theory of contracts, the 'contract's construction should be that which would be understood by an objective, reasonable third party.'"[74] "Clear and unambiguous language in an insurance policy should be given its ordinary and usual meaning."[75]

When assessing either the duty to defend or indemnify we "typically look[] to the allegations of the complaint to decide whether the third party's action against the insured states a claim covered by the policy, thereby triggering the duty to defend."[76] "The test is whether the underlying complaint, read as a whole, alleges a risk within the coverage of the policy."[77] To determine whether American Casualty is bound to defend Mr. Reese requires us to adhere to the following principles: "(1) where there is some doubt as to whether the complaint against [Mr. Reese] alleges a risk insured against, that doubt should be resolved in favor of [Mr. Reese]; (2) any ambiguity in the pleadings should be resolved against the [American Casualty]; and (3) if even one count or theory alleged in the complaint lies within the policy coverage, the duty to defend arises."[78]

We hold the Policy applies to L.N.'s underlying civil lawsuit against Mr. Reese. The Policy exclusions also apply. The exclusions confirm American Casualty owes no duty to defend or indemnify Mr. Reese in L.N.'s underlying civil lawsuit. The Policy's Professional Liability Coverage creates a general duty to defend or indemnify Mr. Reese.[79] But, like most policies, Mr. Reese's Policy includes exclusions from coverage. The list of exclusions excuses the general duty to defend or indemnify if the underlying claim meets a policy exclusion.[80]

### 1.   American Casualty agreed to a general duty to defend or indemnify under the Professional Liability Coverage.

The Professional Liability Coverage requires American Casualty to pay all amounts up to the coverage limit for personal injury liability.[81] Personal injury liability includes liability for

claims arising from assault "committed in the conduct of [the policyholder's] professional services."[82] The Professional Liability Coverage requires American Casualty to "defend any claim that is a . . . personal injury claim."[83] A personal injury claim is any claim arising from assault "committed in the conduct of [the policyholder's] professional services."[84]

L.N.'s claim against Mr. Reese in L.N.'s underlying civil lawsuit is a personal injury claim. L.N., through his mother, alleges Mr. Reese sexually assaulted him "as a direct and proximate result of" Mr. Reese's employment.[85] L.N. further alleges Mr. Reese "act[ed] as an agent and employee" of Delaware Guidance Services for Children and Youth when he committed the alleged sexual assaults because the Delaware Guidance Services for Children and Youth assigned Mr. Reese "to be the counselor and responsible for the care" of L.N.[86] Making all reasonable inferences in favor of Mr. Reese, we infer Mr. Reese's alleged actions happened while Mr. Reese carried out his professional services as an employee of Delaware Guidance Services for Children and Youth. The general duty to defend and indemnify under the Professional Liability Coverage applies to the underlying civil lawsuit because it is a personal injury claim.

### 2.     The Professional Liability Coverage sexual misconduct exclusion excludes coverage in underlying civil lawsuit.

Mr. Reese and American Casualty agreed to a sexual misconduct exclusion from coverage.[87] The sexual misconduct exclusion excludes from the Professional Liability Coverage the general duty to defend or indemnify "any claim for . . . any act of sexual misconduct which has been determined to have occurred by any . . . court ruling . . . **whether appealed or not**."[88]

Mr. Reese seeks coverage in L.N.'s underlying civil lawsuit involving only claims for sexual assault.[89] Courts in both Maryland and Delaware determined the same act of alleged sexual assault occurred when the state courts sentenced Mr. Reese after Mr. Reese's guilty pleas.[90] Mr. Reese's pending post-conviction relief motions are not relevant here because the sexual

misconduct exclusion in the Professional Liability Coverage applies even if the court ruling has been appealed.[91]  There is no dispute of a court ruling convicting Mr. Reese of sexual misconduct.

American Casualty has no duty to defend or indemnify Mr. Reese in the underlying civil lawsuit by L.N.'s mother under the Professional Liability Coverage because of the sexual misconduct exclusion Mr. Reese agreed to in the Policy.[92]

### C.   American Casualty owes no duty to defend or indemnify Mr. Reese under the Workplace Liability Coverage.

American Casualty argues if L.N.'s underlying civil lawsuit is covered under the Policy's Workplace Liability Coverage, it owes no duty to defend or indemnify Mr. Reese because the parties agreed to exclude coverage for sexual misconduct claims.[93] Mr. Reese argues L.N.'s claims lack merit and so the exclusions do not apply.[94] We hold there is no duty to defend or indemnify Mr. Reese in L.N.'s underlying civil lawsuit under the Workplace Liability Coverage.

The Policy's Workplace Liability Coverage creates a general duty to defend or indemnify Mr. Reese.[95] The list of exclusions allows the American Casualty to excuse the general duty to defend or indemnify if an exclusion is alleged in the four-corners of the underlying lawsuit.[96]

### 1.   L.N.'s claims alleged against Mr. Reese are workplace liability claims.

The Workplace Liability Coverage requires American Casualty to pay all amounts up to the coverage limit for workplace liability and personal liability.[97] The Workplace Liability Coverage requires American Casualty to "defend any claim" covered by the Workplace Liability Coverage.[98] Mr. Reese becomes legally obligated to pay a workplace liability as a result of an injury "caused by an occurrence that happens at the workplace . . . ."[99] An occurrence is "an accident, including continuous or repeated exposure to conditions, which results in injury . . . ."[100] Mr. Reese becomes liable for a personal liability as a result of a personal liability claim.[101] The personal liability claim must happen at Mr. Reese's residence and arise out of non-business

activities.[102]

L.N.'s claims in the underlying civil lawsuit against Mr. Reese are workplace liability claims. American Casualty argues an "occurrence" did not cause the injury and it did not happen at the workplace.[103] But the cause of the alleged injury in the underlying civil suit are unknown without the effects of issue preclusion. It is impossible to know if an "occurrence" – an accident – caused the injury without a final verdict.[104] The location of the alleged sexual assault is unknown without the effect of issue preclusion. We have a question of fact on this issue and cannot enter summary judgment for American Casualty based on this argument without undisputed facts. Making all reasonable inferences in favor of Mr. Reese, we today infer Mr. Reese's alleged occurrence happened at a workplace. We cannot enter summary judgment as a matter of law precluding the general duty to defend under the Workplace Liability Coverage. But the question remains whether the parties agreed to an exclusion from coverage.

**2.      The Workplace Liability Coverage sexual misconduct exclusion excludes coverage in the underlying civil lawsuit.**

American Casualty argues the sexual misconduct exclusion under the Workplace Liability Coverage excludes its duty to defend and indemnify L.N.'s claims against him in the underlying civil lawsuit because Mr. Reese committed an act of sexual misconduct.[105] Mr. Reese disputes the sexual misconduct.[106]

The sexual misconduct exclusion under the Workplace Liability Coverage excludes from the general duty to defend or indemnify "any *claim* for . . . any *act* of sexual misconduct."[107] A claim is "a demand for money . . . alleging injury or damage" or "the filing of a suit . . . naming [the policyholder] and alleging injury or damage."[108] It is undisputed L.N.'s mother sued Mr. Reese alleging injury in the underlying civil lawsuit.[109] It is also undisputed the underlying claim against Mr. Reese is for sexual assault.[110] A court ruling is not necessary for this exclusion, unlike

the Professional Liability Coverage's sexual misconduct exclusion. The Workplace Liability Coverage sexual misconduct exclusion still applies even if the sexual assault claim is meritless or Mr. Reese is ultimately found not liable. The sexual misconduct exclusion applies here because L.N. claims an *act* of sexual misconduct by Mr. Reese—a sexual assault. Mr. Reese agreed American Casualty is excused from paying for his defense or indemnity arising from a claim for any act of sexual misconduct. His challenges to his guilty pleas and resultant criminal convictions do not affect our analysis.

American Casualty has no duty to defend or indemnify Mr. Reese in L.N.'s underlying civil lawsuit under the Workplace Liability Coverage.[111]

### D.   We need not decide whether the sexual misconduct sublimit applies.

American Casualty argues the sexual misconduct sublimit should limit indemnification to $25,000. There is no duty to indemnify in the underlying civil lawsuit, so we need not decide whether the sexual misconduct sublimit properly limits any indemnification American Casualty may have owed.

## III.   Conclusion

American Casualty fails to meet its burden to prove the guilty pleas in the Maryland and Delaware criminal cases are sufficiently final to bar Mr. Reese from disputing the facts of sexual assault in L.N.'s underlying civil lawsuit. American Casualty also does not show the Professional Liability Coverage and Workplace Liability Coverage necessarily do not apply as a matter of law. But the Policy's sexual misconduct exclusions confirm Mr. Reese and American Casualty agreed to excuse American Casualty from providing a defense or indemnity from findings or claims of sexual misconduct under certain circumstances. American Casualty owes no duty to indemnify or defend Mr. Reese in L.N.'s underlying civil lawsuit because of the sexual misconduct exclusions and may, subject to procedural requirements in the Delaware Superior Court, withdraw from

defending Mr. Reese.

---

[1] Our Policies require a Statement of Undisputed Material Facts ("SUMF") and an appendix in support of summary judgment. American Casualty Company filed its brief in support of summary judgment, SUMF, and Appendix ("App'x") at D.I. 52, 53, and 54-1, respectively. Mr. Reese responded to the motion for summary judgment at D.I. 56. Mr. Reese did not file a response to the SUMF.

[2] App'x at 29.

[3] SUMF ¶¶ 5–7; App'x at 131–135, 141; *see also State of Delaware v. Allen Reese*, Case No. S2005008448; *State of Maryland v. Allen Reese*, Case No. C-23-CR-20-000030.

[4] App'x at 131–135.

[5] *Id*. at 141, 158–163.

[6] D.I. 44-1; D.I. 52 at 12.

[7] D.I. 44-1; D.I. 56 at 5. American Casualty first represented Mr. Reese moved for post-conviction relief in both criminal cases. *See* D.I. 52 at 12. American Casualty later acknowledged Mr. Reese has not yet moved for post-conviction relief in the Maryland criminal case. D.I. 61 at 4. Mr. Reese, likewise, states he plans to move for post-conviction relief in the Maryland criminal case but is awaiting action by Maryland's Public Defender Post Conviction Defenders Division. D.I. 56 at 5; D.I. 44-1.

[8] D.I. 44.

[9] App'x at 96–98.

[10] *Id.* at 96–97.

[11] We do not know the status of L.N.'s claim against the Delaware Guidance Services for Children and Youth alleged in the underlying civil lawsuit.

[12] App'x at 29; SUMF ¶ 1.

[13] App'x at 29; SUMF ¶ 1.

[14] *Id*. at 105–126.

[15] *Id.*

[16] App'x at 29; SUMF ¶ 1.

[17] App'x at 27–41.

[18] "We will not defend any claim for . . . any act of sexual misconduct which has been determined

to have occurred, by . . . court ruling, . . . whether appealed or not." *Id*. at 41, 43, 59.

[19] "We will not defend any claim . . . arising out of . . . a willful violation of a statute. We will defend any civil suit against [the policyholder] seeking amounts which would be covered if this exception did not apply." *Id.* at 41–42.

[20] "We will not . . . pay any amounts . . . based on . . . punitive or exemplary amounts." *Id.*

[21] "We will not defend any claim . . . arising out of . . . any injury or damage you expected or intended." *Id.*

[22] *Id.* at 45.

[23] "We will not defend any claim for . . . any act of sexual misconduct." *Id.* at 47, 49, 59.

[24] "We will not defend any claim . . . arising out of . . . injury or damage from any professional services, placement services, or personal injury." *Id.* at 47.

[25] "We will not defend any claim . . . arising out of . . . injury or damage arising out of an occurrence which is also a willful violation of a statute. We will defend any civil suit against [the policyholder] seeking amounts which would be covered if this exception did not apply." *Id.*

[26] "We will not . . . pay any amounts . . . based on . . . punitive or exemplary amounts." *Id.* at 47–48.

[27] "We will not defend any claim . . . arising out of . . . any injury or damage you expected or intended." *Id.*

[28] *Id.* at 58–59.

[29] *Id.*

[30] *Id.*

[31] *Id.*

[32] D.I. 42.

[33] *Id.*

[34] *Id.*

[35] D.I. 51. Summary judgment is proper when "the movant shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material facts are those 'that could affect the outcome' of the proceeding, and 'a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party.'" *Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017) (quoting *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011)). "Summary judgment is appropriate only if, after drawing all reasonable inferences in favor of the non-moving

party, there exists 'no genuine dispute as to any material fact' and the movant 'is entitled to judgment as a matter of law.'" *Moyer v. Patenaude & Felix, A.P.C.*, 991 F.3d 466, 469 (3d Cir. 2021) (quoting *Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 770 (3d Cir. 2018)). We do not weigh evidence or make credibility determinations. *Peroza-Benitez v. Smith*, 994 F.3d 157, 164 (3d Cir. 2021) (quoting *Baloga v. Pittston Area Sch. Dist.*, 927 F.3d 742, 752 (3d Cir. 2019)).

"The party seeking summary judgment 'has the burden of demonstrating that the evidentiary record presents no genuine issue of material fact.'" *Parkell v. Danberg*, 833 F.3d 313, 323 (3d Cir. 2016) (quoting *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 643 (3d Cir. 2015)). If the movant carries its burden, "the nonmoving party must identify facts in the record that would enable them to make a sufficient showing on essential elements of their case for which they have the burden of proof." *Willis*, 808 F.3d at 643 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "If, after adequate time for discovery, the nonmoving party has not met its burden, pursuant to Federal Rule of Civil Procedure 56, the court must enter summary judgment against the nonmoving party." *Id.* (citing *Celotex*, 477 U.S. at 322–23).

[36] D.I. 51.

[37] D.I. 52 at 18–20.

[38] *Id*. at 20–26.

[39] *Id.*

[40] *Id.* at 29–31.

[41] D.I. 56 at 9–15.

[42] D.I. 52 at 19–20.

[43] D.I. 56 at 6–7.

[44] D.I. 55 at 19–20.

[45] *Messick v. Star Enter.*, 655 A.2d 1209, 1211 (Del. 1995).

[46] *Id.* (emphasis added).

[47] *Proctor v. State*, 931 A.2d 437 (Del. 2007) (internal citation omitted).

[48] *Smith v. Kent Cnty. Soc'y for the Prevention of Cruelty to Animals, Inc.,* 2016 WL 5404097, at *2 (Del. Super. Ct. Sept. 28, 2016); *see also Murrey v. Shank*, 2011 WL 1415023, at *1 (Del. Super. Ct. Apr. 13, 2011) ("Collateral estoppel prevents a litigant who pled guilty and was convicted by a court to challenge the conviction in a subsequent civil trial.").

[49] *Cunningham v. Outten*, 2001 WL 428687, at *1 (Del. Super. Ct. Mar. 26, 2001) (internal citations omitted); *Petrella v. Alexander*, 1991 WL 236921, at *1 (Del. Super. Ct. Nov. 8, 1991) ("The principle that a guilty plea to a criminal charge collaterally estops the person who entered

the guilty plea from relitigating the issues which were necessary to guilt of the criminal charge is well established[.]").

[50] *See generally Messick*, 655 A.2d at 1211.

[51] *See Fisher*, 2012 WL 3550497, at *3 (considering cases from the Court of Appeals for the Sixth Circuit); *State v. Machin*, 642 A.2d 1235, 1238 (Del. Super. Ct. 1993) ("The Supreme Court in *Ashe* held that collateral estoppel means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit.").

[52] *Free Speech Coal., Inc. v. Att'y Gen. of U.S.*, 677 F.3d 519, 541 (3d Cir. 2012) (citing *In re Brown*, 951 F.2d 564, 569 (3d Cir. 1991)).

[53] *Id.* (quoting *Dyndul v. Dyndul*, 620 F.2d 409, 412 (3d Cir. 1980)).

[54] *Id.* (quoting *In re Brown*, 951 F.2d at 569).

[55] *Id.*

[56] *Id.*

[57] *Id.*

[58] *Anderson v. Commr*, 698 F.3d 160, 162 (3d Cir. 2012).

[59] *Id.*

[60] *Id.*

[61] *Id.* at 166 (emphasis added).

[62] *Messick*, 655 A.2d at 1211.

[63] Intentionality is necessary to the Delaware crime and sexual activity is necessary to both the Delaware and Maryland crimes. The leading Delaware crime Mr. Reese pled guilty to (11 Del. C. § 778(2)) requires "*[i]ntentionally* engage[ing] in sexual penetration with a child." *See* D.I. App'x at 129. Delaware law defines intentionally as "the person's conscious object to engage in conduct of that nature or to cause that result . . . ." 11 Del. C. § 231(b). The Maryland crime Mr. Reese pled guilty to (Md. Code., Crim. Law § 3-602(b)(1)) prohibits the "sexual abuse" of a minor and "sexual abuse" includes "incest; rape; sexual offense in any degree; and unnatural or perverted sexual practices."

[64] The first finality factor ("whether the parties were fully heard") does not apply here because there are no substantive hearings during a guilty plea. *In re Brown*, 951 F.2d at 569. The second finality factor ("whether a reasoned opinion was filed") cuts slightly against preclusion because the courts accepting the pleas and sentencing Mr. Reese did not issue an opinion. *Id*. The third finality factor ("whether that decision could have been, or actually was, appealed") cuts against

preclusion because Mr. Reese seeks post-conviction relief in Delaware which is still pending and plans to move for post-conviction relief in the Maryland case. *Id*. There is no evidence Mr. Reese is trying to abuse process or forum shop by opposing American Casualty's Motion for Summary Judgment. *See Free Speech Coal., Inc.*, 677 F.3d at 541.

[65] *See Proctor v. State*, 931 A.2d 437 (Del. 2007).

[66] D.I. 61 at 8.

[67] D.I. 52 at 20–25.

[68] D.I. 56 at 8–11.

[69] *Id*. at 4.

[70] D.I. 52.

[71] *Id*. at 17–18.

[72] *Exelon Generation Acquisitions, LLC v. Deere & Co.*, 176 A.3d 1262, 1266–67 (Del. 2017) (quoting *Rhone-Poulenc Basic Chemicals Co. v. Am. Motorists Ins. Co.*, 616 A.2d 1192, 1195 (Del. 1992)).

[73] *Id*.

[74] *Id*. at 1267 (citing *Salamone v. Gorman*, 106 A.3d 354, 367–68 (Del. 2014) (quoting *Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1159 (Del. 2010)).

[75] *Rhone-Poulenc Basic Chemicals Co. v. Am. Motorists Ins. Co.*, 616 A.2d 1192, 1195 (Del. 1992) (citing *Johnston v. Tally Ho, Inc.*, 303 A.2d 677, 679 (Del. Super. 1973)).

[76] *Pac. Ins. Co. v. Liberty Mut. Ins. Co.*, 956 A.2d 1246, 1254 (Del. 2008) (internal citations omitted).

[77] *Id.*

[78] *Id.* at 1254–55.

[79] App'x at 37–38, 40.

[80] *Id.* at 41–43.

[81] *Id.* at 37.

[82] *Id.* at 35, 37.

[83] *Id.* at 37–40.

[84] *Id.* at 35.

[85] *Id.* at 97.

[86] *Id.* at 96–97.

[87] *Id.* at 58–59.

[88] *Id.* at 41, 43, 59 (emphasis added). Sexual misconduct includes "any act of sexual assault, harassment, abuse or molestation." *Id.* at 58.

[89] *Id.* at 97.

[90] *Id.* at 131, 158–61.

[91] *Id.* at 59.

[92] We do not address the other exclusions under the Professional Liability Coverage because the sexual misconduct exclusion applies.

[93] D.I. 52 at 26–29.

[94] D.I. 56 at 12–15.

[95] App'x at 45.

[96] *Id.* at 47–49.

[97] *Id.* at 45.

[98] *Id.*

[99] *Id.* The workplace is "any location used by [the policyholder] to provide professional services." *Id.* at 36.

[100] *Id.* at 46.

[101] *Id.* at 45. A personal liability claim is any "claim arising out of injury . . . that happens at the [policyholder's] personal residence and arises out of a non-business activity." *Id.* at 46.

[102] *Id.* at 45.

[103] D.I. 52 at 26–27.

[104] American Casualty drafted language which suggests a broad reading of the occurrence clause. The exclusion uses "any claim for" in addition to "based on, arising out of, or related to." App'x at 47. "[C]aused by" is more like "based on" than "claim for," so for an injury to be "caused by" something there must be an evidentiary finding of cause. A mere allegation is not sufficient.

[105] D.I. 52 at 27–28.

<hr>

[106] D.I. 56 at 10–12.

[107] App'x at 47, 49, 59 (emphasis added). Sexual misconduct includes "any act of sexual assault, harassment, abuse or molestation." *Id.* at 58.

[108] *Id.* at 34.

[109] *Id.* at 96–98; SUMF ¶ 3.

[110] SUMF ¶ 3.

[111] We do not address the other exclusions under the Workplace Liability Coverage because the sexual misconduct exclusion applies.